43 9
46 1535

## No. 10,702.

### A. M. COLLINS VS. LOUISIANA STATE LOTTERY COMPANY.

1. To constitute a completed contract of sale there must be an agreement for the object and the price.

2. Although consent to such an agreement need not be express, but may be implied from acts and conduct, such acts must afford conclusive evidence of consent.

3. The defendant had the right to adopt reasonable and appropriate rules for the management of its complicated business, and to conduct the same in accordance therewith.

4. When these rules prescribe a particular process to be followed in the filling of orders for tickets, the order is not filled until that process is completed; and although, as one step in that process, certain tickets may have been selected to be appropriated to the order, such selection is only conditional upon the completion of the process; and when the process can not be completed within the time and in the manner prescribed, it has the right to cancel the selection and leave the order unfilled.

5. In such case there was no binding agreement as to the object; the property therein did not pass; the defendant could not have retained the price had the ticket proved a blank, and the plaintiff can not claim the prize which the ticket drew.

6. In this case the ticket, in common with all others which had not been sold, had been destroyed before the drawing; and the defendant's dealings exhibited that *uberrima fides*, which should be exacted from it in its peculiar business.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

---

*P. E. Theard & Sons* for Plaintiff and Appellant:

This is a suit on a contract of sale.

Three circumstances concur to the perfection of the contract of sale: the thing sold, the price and the consent. C. C., Arts. 2439, 1779, 1811, 1816.

*As between the parties* the sale is considered to be perfect and the property is of right acquired to the purchaser with regard to the seller as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered nor the price paid. C. C., Art. 2456.

Plaintiff has proved that he sent from Baltimore to defendant an order for twenty fractional tickets in its drawing for January, 1890; that the order was accompanied by the price; that the price was received by defendant; that the order was filled; and that twenty fractional tickets were selected and set aside for him, among which was one-twentieth of ticket No. 12,122, which drew the prize of $100,000. He has therefore shown the concurrence of *the thing sold, the price* and *the consent* necessary to the perfection of the sale, and as owner of the winning ticket sold, he is entitled to recover the prize drawn by it.

The failure to deliver plaintiff's tickets and their destruction by defendant before the drawing do not affect the rights of ownership acquired by plaintiff as soon as the sale was perfected.

The notice printed on the back of plaintiff's order, "*Remittances sent too late can only be attended to for the ensuing drawing*," and communicated to plaintiff before the sending of the order, constitute a condition precedent to the sale, which determines immediately upon receipt of the order, and before execution of the contract.

---

*Thos. J. Semmes* and *Jos. P. Hornor* for Defendant and Appellee:

When the agreement for sale is of a thing not specified, the contract is an executory agreement, and the property does not pass.

"All the conditions which he who gives or proposes, annexed to the delivery or the acceptance of the proposition, are also presumed to have been accepted by the act of receiving." C. C. 1816.

The opinion of the court was delivered by

FENNER, J.    The ground of plaintiff's claim is that he is the owner, by purchase, of one-twentieth of ticket No. 12,122 in the drawing of January 13, 1890, which drew the prize of $100,000.

The defendant denies plaintiff's ownership.

The salient facts are the following: On January 10, 1890, plaintiff sent to defendant, by express, from Baltimore, Md., a package containing an order for twenty twentieths of tickets in the drawing of January 14, and $20 as the price thereof.    The order was written on a blank furnished by defendant, and contained, amongst others, the following significant statements: "It is of the utmost importance that correspondents send in their orders early.    Many complaints arise from the fact that they wait for the last moment, thus causing a large accumulation of orders and rendering it impossible to give them the careful attention we desire;" and also this: "Remittances sent too late can only be attended to for the ensuing drawing."

The package was received by defendant at about 1 o'clock P. M. of January 13, the day before the drawing.    The defentant conducts its large and complicated business according to certain rules and forms of proceeding applicable to all orders. Letters are opened by one clerk, who hands the orders to another clerk, who fills them by selecting the tickets called for; he puts these tickets in the letter containing the order and sends it, with others of like character, to the correspondence department, where a distributing clerk arranges the orders alphabetically and sends them to an entry clerk, who enters the date, name, address, number and size of tickets on sheets which are afterward bound in a book.    The letter and tickets are then passed to a clerk called the "writer," who puts the tickets in a letter and forwards them to the purchaser.    The rules further require that all letters containing as much as $20 in tickets shall be sent by registered mail, and that no registered letter shall be sent after the day before the drawing.

In compliance with these rules, the filling of plaintiff's order was begun, but never completed.    The letter containing the order was opened; the tickets to fill it were selected, including No. 12,122; the entries thereof were made on sheets; they were handed to the "writer" to be forwarded according to instructions, or, in absence

of instructions, according to the rules of the company. The order in this case contained no instructions, and reached the " writer " after the closing of the registry department of the post-office, rendering it impossible to comply with the rules. He therefore returned the order and tickets to the entry clerk, who canceled the entry which had been made, and handed the order and tickets to another clerk, whose duty it is to receive such orders as are too late to be filled, and are passed over to be filled with tickets for a subsequent delivery. He returned the tickets to the clerk who selected them, who, in the fulfilment of his duty under the rules, canceled these, with all other unsold tickets, before the drawing on the following day.

There is no dispute about the facts, and not the slightest hint of any fraud or unfair practice.

The plaintiff claims that the sale was complete from the moment that defendant selected and set apart the tickets to be sent to him; and he relies upon the elementary principles announced in the Code, that the contract of sale is perfect when three things concur: the thing sold, the price and the consent (C. C., Art. 2439) ; that consent may be expressed in words or implied from actions (Arts. 1811 and 1816) ; and that " the sale is perfect between the parties and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered nor the price paid." Art. 2456.

The real question is whether there did exist an " agreement " as to the object. There was no express agreement on the part of defendant. Can his assent to such agreement be implied from his acts as above set forth?

Article 1816 says: " Actions without words, either written ro spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract." The article proceeds to mention certain classes of acts from which consent is implied, as for instance: " To receive goods from a merchant without any express promise, and to use them, implies a contract to pay the value," etc. Article 1818 provides: "Where the law does not create a legal presumption of consent, from certain facts, then, as in the case of other simple presumptions, it must

be left to the discretion of the judge whether assent is to be implied from them or not."

This is the article which defines our duty in this case. We are to determine whether, from the acts of defendant, we can imply its consent to a final and binding appropriation of the tickets selected to the order of plaintiff, as the object of the sale. We think we can not. The selection of tickets made by defendant was simply a step in the process of filling an order which the defendant had adopted under its rules. The selection was merely a conditional appropriation of the tickets to the order which did not, and was not intended to, become final or binding until the process had been completed, resulting in the actual filling of the order. When it became manifest that the filling of the order according to its rules could not be completed, defendant had the clear right to cancel the prior inchoate steps which had been taken for that purpose, and to treat the order as not filled. Of this plaintiff had no right to complain. He had notice of the importance of sending his order early and of the danger that, if sent late, the accumulation of orders might render it impossible to give them attention; and he was further advised that, if received too late, his remittance would be applied to the ensuing drawing. This was exactly what occurred. His order came too late to be filled in accordance with the rules of the company. An attempt was made to fill it, which was ineffctual. The company, therefore, did not fill his order. It was never filled; and the appropriation thereto of the tickets selected never became final and binding.

Had the tickets drawn no prize, and had the company, having acted as it did, claimed the right to retain the price, such a pretension would have been absurd.

In this case the company had a perfect excuse for not filling the order, because it was impossible to do so in accordance with its rules; but, even if it had no such excuse and had had time to complete it, yet if it did not choose to do so and saw fit to cancel the selection of tickets before completing the filling of the order by mailing them, it would have had the right to do so, if its action were free from taint of fraud or malpractice. Says Mr. Benjamin in his work on sales: "A very common mode of doing business is for one merchant to give an order to another to send him a certain quan-

tity of merchandise, as so many tons of oil, so many hogsheads of sugar.

"Here it becomes the duty of the vendor *to appropriate the goods to the contract.* The difficulty is to determine what constitutes the appropriation; to find out at what precise point the vendor is no longer at liberty to change his intention.

"It is plain that the vendor's act in simply selecting such goods as he *intends* to send can not change the property in them. He may lay them aside in his warehouse, and change his mind afterward; or he may sell them to another purchaser without committing a wrong, because they do not yet belong to the first purchaser, and the vendor may set aside other goods for him. It is a question of law whether the selection made by the vendor in any case is a mere manifestation of his intention, which may be changed at his pleasure, or a determination of his right conclusive on him and no longer revocable." Benjamin, on Sales, Sec. 358.

This is objected to as a common law authority; but it is also common sense, and in harmony with all principles of our own law.

The rules adopted by the company were reasonable and conservative, and necessary for the safety of its correspondents and for the preservation of its own good faith from suspicion or attack. If it should appropriate tickets to orders without dispatching them, or if it should dispatch them only on the day of the drawing, such proceedings would necessarily arouse suspicion as to their honesty and fairness from the very nature of defendant's business. So the rule requiring tickets to be forwarded by registered mail is manifestly useful and proper.

The acts of defendant relied on by plaintiff only exhibit an intention to appropriate specific tickets to the filling of plaintiff's order, conditioned on the order being actually and finally filled in accordance with its rules; and when that condition failed, it had the perfect right to abandon the intention and to cancel the inchoate appropriation, which had not become irrevocable.

Judgment affirmed.