JANVIER, Judge.
This is a suit for damages for breach of contract. It is based on a 'contract of lease under which the defendant is alleged to-have- agreed to rent for a dwelling, for a term of sixteen months, an apartment in a building owned by plaintiff and to have vacated the apartment, contending that no contract of lease had been entered into.
At some time prior to May 1948, plaintiff, Albert E. Briede, Jr., commenced the erection, of a fourrplex -apartment- building in New Orleans. Shortly before the building was completed the defendant, Efton Lewis, entered into a verbal agreement with Briede under which he agreed to lease one of the apartments at One Hundred Dollars a month from June 1st, 1948, until September 30th, 1949, a .total term of sixteen months.
At that time, Lewis had certain furniture for which he required storage space and, at his request, Briede agreed that the furniture might be stored in the apartment, without cost, from that time until the term of the lease should commence.
The furniture was placed in the apartment on May 7th, and a few days later, as the apartment was-.practically- completed, in order to save hotel expense, Mr. and Mrs. Lewis, with the consent of Briede, moved into the apartment and occupied it as a dwelling from May 10th or 12th, 1948.
The building was entirely completed before June 1st, 1948, at which time the term of the lease was to commence to run.
When the verbal agreement to lease was entered into all details and conditions were agreed upon and it was understood that the agreement would be reduced to writing, and that monthly rent notes would also be executed by Lewis," ¡but before this was done Mr. and Mrs. Lewis were permitted to move into the apartment as we have already stated. ■ ''
After Mr. and Mrs. Lewis had occupied the apartment for about eight days, Mr. Lewi's received from Briede the written lease and the rent notes. He returned them to Briede, calling -attention to the incorrect spelling of his first name and- also to the fact that-the apartment was "identified by the letter “-C” whereas it should have *350 been referred to as Apartment “3”. He did not question the correctness of any of the details or conditions set forth in the lease or in the notes. '
Briede, of course, made these minor corrections but, when he returned the lease and the notes to Lewis for execution, he was told that Mr. and Mrs. Lewis had changed their minds and did not intend to rent the apartment, and on May 28th, 1948, they vacated it.
It remained vacant during the month of June 1948, and Briede, in an effort to minimize his damage, obtained another tenant under a léase commencing on July 1st, 1948, but at a rental of only Ninety Dollars a month.
He then brought this suit against Lewis, claiming a loss of one hundred dollars for the month of May and a loss of ten dollars a month for each of the remaining fifteen months of the term of the lease. He also claimed Twelve & 95/100 dollars as the cost of cleaning up the premises and of making certain repairs, which he averred were made necessary 'by the occupancy of Mr. and Mrs. Lewis.
Lewis filed an exception of no cause of action and an answer.
The exception is based on the contention thalt, since it was understood that the agreement would be reduced to writing, no obligation resulted from the verbal agreement nor from his occupancy of the premises.
In his answer, he averred that the preliminary talks had been mere discussions and that it was understood that no contract would come into being until the contemplated written lease and the notes should be executed.
There was judgment in the First City Court of New Orleans in favor of plaintiff and against defendant in the sum of $250.00. Defendant has appealed. Plaintiff has not answered the appeal.
In spite of defendant’s averment that the preliminary talks were mere discussions, he admitted on the witness stand that a full and complete agreement had been reached and that, as a result of it, Briede had allowed him to move his furniture into the apartment and also to occupy it as a dwelling before the commencement of the term of the lease and before the execution of the written lease and of the notes.
We find that only a question of law is presented and we think that that question was correctly answered by the judge a quo.
Counsel for defendant 'contends that the situation is controlled by the doctrine announced by the Supreme Court in Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89, whereas counsel for plaintiff maintains that the views expressed and the conclusion reached by the Supreme Court in Johnson v. Williams, 178 La. 891, 152 So. 556, require a decree affirming the judgment appealed from.
In the Laroussini case, the Supreme Court found that the prospective lessor and the prospective lessee were already lessor and lessee in a lease agreement which was about to expire, and that they negotiated for a new lease and verbally agreed on all details and conditions, and' they also agreed that this verbal lease “was to be followed by a writing setting forth the same, and to be signed by the contracting parties, which writing should take the place of, and stand for, what had been agreed on verbally * * *”. [52 La.Ann. 424, 27 So. 90.]
The Court also found that the prospective lessee had suggested that the new agreement “be merely indorsed upon .the then existing written contract of lease, but plaintiff had not consented to this.” The Court further said that the plaintiff “desired a formal contract drawn in renewal of the lease, with ■ accompanying notes * * -pke prospective lessee refused to execute the written lease or to occupy the premises.
The prospective lessor then sued the prospective lessee “basing recovery on the verbal lease.”
The Supreme Court held that there could be no recovery on the verbal lease, saying:
“A verbal contract of lease, complete in itself, independent of any writing, and unaccompanied by an intention to have the same reduced to writing, as perfecting it, is an enforceable contract. And if such a verbal contract be made, and subsequently the parties agree that the same shall be re *351 duced to writing and be signed, and after-wards there is a failure to so reduce it to writing and to signature, — one of the parties refusing, — it is still enforceabe as a binding contract. Carlin v. Harding, 10 La. [223] 225; Avendano v. Arthur & Co., 30 La.Ann. [316] 321.
“But if, when a verbal contract of lease is agreed on, it is understood, contemplated, and intended that it should be reduced to writing, that there should be a written lease, that the written lease should take the place of, and stand for, what has been agreed on verbally in respect to the leasing of the property, then until the writing is drawn up and signed the contract is inchoate, incomplete, and either party, before signing, may recant, retract, recede, withdraw, decline to go further, refuse to consummate. Fredericks v. Fasnacht, 30 La.Ann. 117; Villere v. Brognier, 3 Mart., O.S., [326] 349-527; Bloeker v. Tillman, 4 La. [77] 80; Wolf v. Mitchell, Craig & Co., 24 La.Ann. [433] 434; Fernandez v. Soulie, 28 La.Ann. 31; Des Boulets v. Gravier, 1 Mart., N.S., [420] 421-422; Meyer v. Labau, 51 La.Ann. [1726] 1729, 26 So. 463.”
We think that we detect two facts which appeared in the Laroussini case which must have had some influence in bringing about the decision. The first is that it was expressly agreed that the “writing should take the place of, and stand for * * * ” the oral agreement, and the second is that it was the plaintiff himself, the lessor, who had insisted that there be “a formal contract drawn in renewal of the lease * *
Counsel for plaintiff insists that the Laroussini case is not controlling here and relies upon Johnson v. Williams, supra.
In that case also there was a preliminary agreement to lease and a further agreement that the lease would be reduced to writing. Before the contract of lease was executed, the lessee moved into the premises and occupied them for a long time, paying the regular rental stipulated for in the preliminary agreement to lease. The lessee then vacated the premises and refused to pay the rent for the remainder of the term. The lessor then brought suit for the loss resulting from' there having been no tenant for a part of the unexpired term and for the difference between the agreed rental and the rental which he was able to obtain for. the remainder of the. unexpired term. This is exactly what has been done by the plaintiff in the case at bar.
The defendant in the Jo-hnsoh case contended that the rule laid down in the Laroussini case should control, since the parties had agreed that the lease contract, though agreed to in all details in the preliminary agreement, was to be reduced to writing.
The Supreme Court said:
“But that rule finds no -application in a case like the one here presented. The rule which controls this case is that an agreement to lease designated property for a specified term and a stipulated monthly rental, all understood and agreed to by the parties, creates the relation of landlord and tenant between the parties when followed by use, and occupation of the premises as contemplated.
“Johnson and Williams reached a complete agreement concerning a lease on certain property for a specified term at an agreed rental. * * * ” [178 La. 891, 152 So. 558.]
Later in the opinion the Supreme 'Court said:
“ * * * By taking possession of and using the property as they did, defendants waived their right to have the lease contract reduced to writing. * * *”
There are unimportant differences which we notice between the facts of the Johnson case and the facts -of the case at bar. Here the occupancy was for a shorter time and was rent free. '
Another unimportant difference between this case and the Johnson case is that in the Johnson' Case the preliminary agreement to lease was in writing. ■ However, in it there'was an agréement that there was to be a formal written contract of lease. We do not see that this difference constitutes a distinction.
In the Johnson case, as in this .case, it was understood that there would be. a formal written document and in this case, as in the Johnson case, the tenant moved into the premises under the preliminary agree *352 ment. As the Supreme Court said in that case — “ * * * The agreement to lease was carried out, acted upon to the letter, and thereby became an executed contract. The defendant is as firmly bound as if. the contract contemplated had been reduced to writing and signed.”
Surely the rule of the Laroussini case would not require that, under such facts as are found here, the defendant should 'be permitted to escape liability under his verbal agreement.
There was no misunderstanding between the parties as to details or conditions. There was nothing left to be agreed upon. The term of the lease had not yet commenced to run when the lessee asked the lessor for permission to occupy the apartment ahead of time and, in effect, said that he would sign the lease and the notes in the future whenever they should be sent to him. Surely, after occupying the premises, he cannot be heard to say that he did not sign an agreement and therefore should not be held.
As a matter of fact, he admitted that he had secured “another place”, but said that he had not done so until “after I decided to move out.” He said that he had decided to give up the apartment because of “developments after we moved our furniture into the apartment.”
Obviously, as an afterthought, Mrs. Lewis was placed on the witness stand in an effort to show that there were certain unsatisfactory occurrences after they had moved into the place. She said that Mr. Briede had told her that he wanted to install Venetian blinds and that “that would mean more rent.” . She also said that Briede had complained about her parking her car on one side of the street instead of the other. The Court below paid no attention to these quibbles and we do not either.
Plaintiff proved that he had been unable to secure, a tenant for the month of June and had, therefore, lost the entire rent of One Hundred Dollars for that month, and that he had secúred a tenant at Ninety Dollars per month for the. remaining fifteen months. His loss on these two items was therefore Two Hundred and Fifty Dollars. Since he did not answer the appeal, the award cannot 'be increased in his favor.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.